UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANTOINETTE KALANJIAN,

        Petitioner,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Respondent.

No. 1:17-cv-01414-GSA

**ORDER DIRECTING ENTRY OF
JUDGMENT IN FAVOR OF
COMMISSIONER OF SOCIAL SECURITY
AND AGAINST PLAINTIFF**

I.    <u>Introduction</u>

      Plaintiff Antoinette Kalanjian ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

Supplementary Security Income ("SSI") pursuant to Title XVI of the Social Security Act.  The

matter is currently before the Court on the parties' briefs which were submitted without oral

argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 14, 17,

and 18.  Having reviewed the record as a whole, the Court finds that the ALJ's decision is

supported by substantial evidence. Accordingly, Plaintiff's appeal is denied.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 9.

## II. Procedural Background

On April 4, 2011, the agency found Plaintiff's physical and mental impairments to be non-severe and denied her application for supplemental security income. AR 66. On August 26, 2013, Plaintiff again filed an application for supplemental security income alleging disability beginning June 1, 2010.[2] AR 19. The Commissioner denied her application initially on February 3, 2014, and upon reconsideration on August 13, 2014. AR 19. On August 19, 2014, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 19.

Administrative Law Judge Sharon L. Madsen presided over an administrative hearing on June 9, 2016. AR 40-58. Plaintiff, represented by counsel and assisted by an interpreter, appeared and testified. AR 40. An impartial vocational expert Judith Najarian (the "VE") also appeared and testified. AR 40.

On August 17, 2016, the ALJ denied Plaintiff's application. AR 19-30. The Appeals Council denied review on August 28, 2017. AR 1-3. On October 19, 2017, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony and Report

Plaintiff (born July 7, 1959) lived in an apartment with her nineteen-year-old son. AR 44. She spent her typical day at home drinking coffee and watching television. AR 45. She could work in the kitchen about an hour preparing a meal, but would then need to rest for several hours afterward. AR 50-51. Generally, she just made sandwiches. AR 205. Because she was dizzy, she could not do much but lie down and relax. AR 45. She attended church and her brother-in-law sometimes visited her. AR 45. She prepared a list for her son, who shopped for her. AR 45. Her son also worked to help support the household, cleaned the house and did the laundry. AR 50, 52, 205.

///

///

---

[2] The hearing decision does not acknowledge that Plaintiff had previously applied for, and been denied, supplemental security income.

Plaintiff completed the third grade in Lebanon.  AR 44.  Although she was a naturalized citizen of the United States, Plaintiff spoke only Armenian.  AR 44, 46.  She could not read or write.  AR 208.  She had a driver's license but did not drive.  AR 44.

Before her husband died he performed in-home support work in Plaintiff's name because she could not speak English.  AR 46.  She would sign the papers even though she was not doing the job.  AR 46.  Plaintiff worked cleaning empty apartments.  AR 46, 212.

Plaintiff experienced pain in her back, right leg, shoulders and neck.  AR 47, 51.  She took ibuprofen for temporary pain relief. AR 47.  She tried heat, ice and Icy Hot but these did not relieve her pain.  AR 47.  Plaintiff declined her doctor's offer of cortisone injections, which she had heard did not help.  AR 52.  Although she had carpal tunnel surgery, her right hand was painful and grasping was difficult.  AR 47-48.  She could pick up and hold things in her left hand.  AR 49.  Despite diet, insulin and two other medications, Plaintiff's blood glucose remained at about 300.   AR 48.  She had high blood pressure and kidney problems.  AR 48.  Her medications upset her stomach.  AR 48.

Plaintiff estimated that she could lift a pound and a half.  AR 49.  She could stand for an hour and sit for two hours.  AR 49.  Although Plaintiff was able to climb stairs and put on her shoes and socks, she avoided walking for fear of falling.  AR 49.

When Plaintiff's husband died, she experienced severe depression and contemplated suicide.  AR 50.  Medication helped her a little.  AR 50.  Plaintiff also complained of anxiety, particularly when she was alone at home.  AR 50.

**B.**     **Third Party Adult Function Report**

Plaintiff's nephew, Antranik Tony Kalanjian reported that he assisted Plaintiff by driving her to the doctor's office or the store, reading her mail and performing similar tasks.  AR 176.  Tony noted Plaintiff's numb hands, which he attributed to her diabetes.  AR 176.  She slept poorly and was tired during the day.  AR 177.  Plaintiff prepared simple meals but her son performed all household chores.  AR 178.  Plaintiff had no hobbies or interests except for attending church on Sundays and watching "her old country shows."  AR 180.

///

3

According to Tony, Plaintiff's impairments affected her ability to lift, squat, remember, complete tasks, concentrate and use her hands. AR 181. Instead of paying attention, she dozed off. AR 181. She handled stress poorly and became upset at changes in routine. AR 182.

### C. Medical Treatment [3]

Plaintiff's primary care physician was Sergey Zakharyan, M.D. Dr. Zakharyan's treatment records are included in the record at AR 308-63, 474-558, 597-615, 618-624, 679-707. He listed Plaintiff's chronic problems as hyperlipidemia, depression, diabetes, palpitations, osteoarthritis of the left index finger, and right carpal tunnel syndrome.[4] AR 308. On October 30, 2012, Dr. Zakharyan noted that Paxil was helping Plaintiff's anxiety and depression. AR 477.

In April 2013, nurse practitioner Carol Ross ordered an ultrasound of Plaintiff's kidneys to rule out infection or obstruction as a cause of Plaintiff's lower back pain. AR 438. The ultrasound was negative. AR 443, 454-55.

In June 2013, Dr. Zakharyan referred Plaintiff for seven sessions of physical therapy to address her low back pain. AR 407-26. On June 27, 2013, therapist Barbara Fee, P.T., reported that Plaintiff had completed seven sessions of therapy that included evaluation, pain modulation using moist heat and posture education, therapeutic exercises to strength her core and lower extremities, and instruction in home exercise. AR 417. Ms. Fee reported:

> Patient progressed in therapy having pain relief now with lying down, medication, heat and home exercise program. She improved in lower extremity strength and ROM. She no longer has (R) knee and ankle pain, just tenderness at iliac crest instead of L4, L5, S1 joint. Patient will benefit from adherence to her [home exercise plan] for [maintenance] and for additional gains.

AR 418.

A renal ultrasound performed in May 2013 revealed that an angiolipoma on Plaintiff's right kidney had slightly increased in size to 1.3 cm. AR 466. There was a small cyst in the

///

---

[3] The record includes records of medical treatment administered to Plaintiff prior to the denial of Plaintiff's prior application for supplemental security income. This order does not include a discussion of these earlier records, which were evaluated in the prior proceedings.

[4] As is the case with large portions of Dr. Zakharyan's handwritten records, additional chronic diagnoses are illegible. AR 308.

lower mid portion of the left kidney, and a hyperechoic focus in the middle of the left kidney which could be a calculus. AR 466. There was no bladder abnormality. AR 466.

In July 2013, lumbar spine x-rays showed degenerative changes with some disc space narrowing and osteophyte formation at T11-12 and T12-L1, and 0.4 cm. retrolisthesis of T12 on L1. AR 465.

On November 15, 2013, Plaintiff had an initial consultation with surgeon Sanagaram S. Shantharam, M.D., concerning her right hand. AR 608-09. Dr. Shantharam diagnosed carpal tunnel syndrome and ordered a nerve conduction study. AR 609. On March 19, 2014, Dr. Shantharam performed carpal tunnel release surgery on Plaintiff. AR 573-74. On March 31, 2014, the doctor found that Plaintiff had healed well and demonstrated "a good range of motion." AR 620.

On June 24, 2014, Dr. Shantharam diagnosed tendonitis with trigger finger involving the thumb in Plaintiff's right hand. AR 618. The doctor treated Plaintiff by injecting Kenalog mixed with Marcaine and lidocaine into the pulley tendon sheath. AR 618. On February 18, 2015, Dr. Shantharam performed a trigger thumb release synovectomy of Plaintiff's right hand. AR 659.

X-rays of Plaintiff's lumbar spine on September 29, 2014, revealed eleven degree levoscoliosis, degenerative changes with disc space narrowing T11-12 to L1-2, and osteophyte formation T11-12 through L3-4. AR 678.

From December 2015 through February 2016, Plaintiff received physical therapy to address low back pain and lumbar radiculopathy. AR 629-54. On January 11, 2016, the therapist noted that Plaintiff's overall movement remained hesitant but had improved. AR 643. Plaintiff demonstrated an increased range of motion and functional improvement. AR 644. Upon her February 25, 2016 discharge from therapy, Plaintiff demonstrated 100 percent improvement in pain and 80 percent improvement in function. AR 649.

**IV.    Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on

legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

///

6

416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court.  *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988)

Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases such as this one involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

**VI.**     <u>**Summary of the ALJ's Decision**</u>

The ALJ did not address Plaintiff's prior application or the *Chavez* presumption.  Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 19-30.  The ALJ found that Plaintiff had not worked after the application date of August 26, 2013.  AR 21.  Plaintiff had the following serious impairments: obesity, lumbar degenerative joint disease, cervical degenerative joint

disease, right wrist carpal tunnel syndrome (status post release). AR 21. The ALJ determined that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926). AR 24. The ALJ concluded that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c), except that she cannot climb ladders, ropes or scaffolds; she can stoop, crouch, crawl, climb, kneel, and balance frequently; she should avoid concentrated exposure to extreme cold, extreme heat, vibrations and heights; and she can perform occasional forceful gripping and grasping with her right upper extremity. AR 24. Plaintiff was capable of performing her past relevant work as a building maintenance worker. AR 28. Accordingly, the ALJ found that Plaintiff was not disabled. AR 30.

## VII. Failing to Characterize Plaintiff's Mental Impairments as Severe Impairments Was Not Reversible Error

Plaintiff contends that the ALJ erred in failing to categorize her mental impairments as severe at step two.[5] Defendant counters that the ALJ did not deny Plaintiff's application by finding Plaintiff's mental health impairments not severe at step two. The Court agrees with Defendant.

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. §416.920(a)(4)(ii). An impairment is a medically determinable physical or mental impairment or combination of physical or mental impairments. 20 C.F.R. § 416.902(f). If a claimant does not have an impairment or combination of impairments which significantly limit the claimant's physical or mental ability to do basic work activities, the Commissioner will find that the claimant does not have a severe impairment. 20 C.F.R. § 416.920(c).

"The step-two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*,

---

[5] As part of her argument concerning the ALJ's step two analysis, Plaintiff also challenges the ALJ's assessment of the medical opinions of Plaintiff's mental impairments. The ALJ's assessment of the medical opinions of record, including both physical and mental impairments, is addressed at Section VIII below.

869 F.3d 1040, 1048-49 (9th Cir. 2017). An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290; SSR 85-28. "[T]he severity regulation is to do no 'more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.'" SSR 85-28 (quoting *Baeder v. Heckler*, No. 84-5663 (3d Cir. July 24, 1985)). In this case, the ALJ found that Plaintiff's depression and anxiety were not so serious as to preclude her working.

Giving significant, but not great weight to Dr. Lewis' opinion, the ALJ determined at step two that "[t]he claimant's medically determinable mental impairments of anxiety disorder and depression disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 22. She found that Plaintiff had no limitation in activities of daily living and mild limitation in social functioning and persistence or pace. AR 23. Plaintiff has no episodes of decompensation which have been of extended duration. AR 23.

Even if an individual impairment is not sufficiently serious to prevent a person from working, an ALJ must consider the combined effect of all of the claimant's impairments on his/her ability to function, as well as considering the claimant's subjective symptoms such as pain or fatigue. *Smolen*, 80 F.3d at 1290. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." SSR 85-28. The ruling warned:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's abilities to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

SSR 85-28.

For example, Ms. Smolen suffered from childhood cancer that resulted in the loss of one kidney, loss of part of her left lung, changes in her remaining lung tissue, mild anemia, suppression of bone marrow production, and spinal scoliosis, all of which led to severe fatigue and back pain. *Smolen*, 80 F.3d at 1290. The ALJ found only a single severe impairment, "slight scoliosis," which limited her ability to walk and sit. *Id.* The step two analysis disregarded Ms. Smolen's subjective symptoms when determining severity. *Id.* The Ninth Circuit rejected the step two analysis: "Having found Smolen to suffer from only one "severe" impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments—and resulting incapacitating fatigue—affected her residual functional capacity to do work." *Id.* at 1291.

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p) (internal quotations omitted). As a result, a claimant's residual functional capacity should be the same whether or not certain impairments are considered severe. *Buck*, 869 F.3d at 1049.

The ALJ in this case acknowledged the distinction between the step two analysis and the more detailed residual functional capacity assessment and addressed the impact of Plaintiff's mental impairments on her residual functional capacity at the close of the step two analysis:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

AR 23.

The ALJ then proceeded to analyze in detail the opinions of Dr. Khalifa and Dr. Lewis and to explain her determination that the various GAF scores included in the record had limited

value.  AR 23-24.  The ALJ gave greater weight to Dr. Lewis's opinion, which she found to be more consistent with the minimal mental health treatment that Plaintiff had received.  AR 23.  She gave little weight to Dr. Khalifa's opinion which the ALJ found not to reflect fully the medical evidence and Plaintiff's limited mental health treatment.  AR 23-24.

By including her assessment of Plaintiff's mental residual functional capacity in her step two analysis, the ALJ arguably erred by deviating from the five-step sequential evaluation process.  20 C.F.R. § 416.920(a)-(f).  Even if the Court accepts that the deviation from the strict regulatory sequence constituted error, any error was harmless.  In the step five analysis of residual functional capacity, the ALJ acknowledged her responsibility to consider the extent to which physical and mental symptoms limited Plaintiff's ability to function.  AR 25.  In determining the extent to which Plaintiff was limited, the ALJ first addressed Plaintiff's allegations of physical impairments, then allegations of mental impairments:

> Additionally, the claimant testified that she has depression and anxiety; she has panic attacks and is not comfortable around other people.  However, she also stated that she takes prescribed medication, which helps to control her symptoms.

> AR 25.

The ALJ noted that Plaintiff herself outlined activities of daily living which limited the persuasiveness of Plaintiff's claimed limitations.  AR 25.  Thus the hearing decision fully considered the record as a whole, including the allegations and evidence of both physical and mental impairments.

## VIII.   The ALJ's Evaluation of Medical Opinions

Plaintiff challenges the Commissioner's determination of her residual functional capacity, claiming that the ALJ failed to give appropriate weight to the various medical opinions of her physical and mental impairments.  The Commissioner disagrees, contending that the ALJ properly considered the various medical opinions included in the record and fully explained her reasoning in giving certain opinions more weight than others.  The Court finds that the ALJ properly relied on the record as a whole.[6]

_____

[6] The ALJ did not consider the opinions of Rustom Damania, M.D. (AR 383-88) and Ekram Michiel, M.D. (AR 391-94), both of which were submitted and evaluated in Plaintiff's prior application for supplemental security income.

### A. Medical Opinions

#### 1. Agency Physicians

On December 24, 2013, agency psychologist Russell Phillips, Ph.D., concluded that Plaintiff had no determinable mental impairment. AR 68. On February 2, 2014, agency physician Robert Hughes, M.D., opined that Plaintiff could lift and carry fifty pounds occasionally and 25 pounds frequently; could sit, stand or walk six hours of an eight-hour work day; had unlimited ability to climb ramps and stairs, balance stoop, kneel, crouch and crawl; could occasionally climb ladders, ropes, or scaffolds; and should avoid extreme heat and cold, concentrated exposure to vibrations and hazards such as heights and machinery. AR 69-71.

On reconsideration, agency psychologist Anna M. Franco, Psy.D., agreed with the initial determination that Plaintiff's mental impairment was not severe. AR 90. Agency physicians agreed that Plaintiff's physical impairments were not severe but voiced concern that manipulative limitations were a concern and might merit future review if the noted subtlety, full mobility and intact motor ability changed in the future. AR 89. Dr. Bonner opined that Plaintiff could lift and carry fifty pounds occasionally and 25 pounds frequently; could sit, stand or walk six hours of an eight-hour work day; had mildly limited ability to push and pull in both upper extremities; had unlimited ability to climb ramps and stairs, balance stoop, kneel, crouch and crawl; could occasionally climb ladders, ropes, or scaffolds; had limited ability to handle and finger but unlimited ability to reach and feel; and should avoid extreme heat and cold, concentrated exposure to vibrations and hazards such as heights and machinery. AR 92-94.

#### 2. Consultative Examination (Psychiatric)

On November 15, 2013, psychologist Mary Lewis, Psy.D., conducted a comprehensive psychiatric evaluation of Plaintiff. AR 560-65. Plaintiff complained of pain in her hands. AR 560. Plaintiff had never been hospitalized for psychiatric problems. AR 561. Dr. Lewis did not diagnose a psychiatric or personality impairment. AR 564. She wrote:

> The claimant's limitations appear to be primarily due to reported medical concerns. When asked her reason for applying for SSI benefits, she did not report any psychological distress and did not exhibit symptoms consistent with a major medical disorder. From a mental health perspective, the claimant appears to be able to

function adequately.

AR 564.

Based on Plaintiff's inability to perform simple mathematics, Dr. Lewis questioned whether Plaintiff would be capable of managing her own funds. AR 564. However, the doctor found no significant impairment of Plaintiff's ability to understand and remember very short and simple instructions, to understand and remember detailed instructions, to maintain concentration and attention, to accept instructions from a supervisor and respond appropriately, to sustain ordinary routine without special supervision, to complete a normal workday and workweek without interruptions at a consistent pace, to interact with coworkers, and to deal with various changes in the work setting. AR 564-65. Plaintiff was unlikely to deteriorate emotionally in the work setting. AR 565. Plaintiff's daily activities and social functioning were not significantly impaired. AR 565.

### 3.  Consultative Examinations (Internal Medicine)

On November 20, 2013, internist Samuel B. Rush, M.D., prepared a complete internal medicine evaluation of Plaintiff. AR 567-71. Plaintiff's main complaint was arthritis of her hands. AR 567. Plaintiff was 63 inches tall and weighed 165 pounds. AR 568. The examination was generally within normal limits. AR 568-70. Dr. Rush saw no signs of arthritis in Plaintiff's hands and commented on her "fairly good" grip. AR 570. Dr. Rush imposed no functional restrictions. AR 570-71.

Dr. Rush prepared a second evaluation on July 14, 2014, in which he corrected his assessment to reflect that Plaintiff had subsequently been diagnosed with carpal tunnel syndrome instead of arthritis in her hands. AR 728-32. Dr. Rush diagnosed:

> 1.  Osteoarthritis of hands, back, knees, and feet by history with no joint limitations noted on objective measurements.
>
> 2.  Post op apparent carpal tunnel surgery right hand, but fairly good grip maintained in both hands. Grip on the right is 3 on a scale of 5. Grip on the left is 4 on a scale of 5. She had normal range of motion of her lumbar spine and she walks normally.
>
> 3. Diabetes mellitus insulin dependent probably type 2, however poor control according to the claimant. She does have a history of chronic kidney disease, but not bad enough for dialysis.

1    4.  History of high cholesterol, on medications.

2    5.  History of high blood pressure, good on current medications.
     No evidence of end-organ damage.

3

4    6.  Chronic anxiety disorder, controlled with paroxetine.  Mental
     status is normal today.

5    AR 731.

6        Because of her restricted grip strength, Dr. Rush opined that Plaintiff could push, pull, lift

7    and carry 50 pounds occasionally and 25 pounds frequently.  AR 732.  He imposed no restrictions

8    on Plaintiff's walking, standing, sitting, agility hearing seeing or using her hands.  AR 732.

9    Plaintiff had no postural limitations and could do routine bending, kneeling, stooping, crawling

10   and crouching.  AR 732.

11                    **4.      Consultative Examination (Psychiatric)**

12       On July 20, 2014, psychiatrist Soad Khalifa, M.D., conducted a comprehensive

13   psychiatric examination of Plaintiff.  AR 625-28.  Plaintiff's chief complaint was that she was

14   "scared all the time, panic."  AR 625.  Plaintiff told Dr. Khalifa that her troubles arose six years

15   earlier when her husband died of a heart attack while driving a car in which she was a passenger.

16   AR 625.  Plaintiff said that she was afraid of dying, easily irritable, and had been depressed for

17   about two years.  AR 625.  She experienced flashbacks of her husband's death and had

18   nightmares.  AR 625.  She is afraid that if she gets close to another person he too will die.  AR

19   625-26.  Dr. Khalifa diagnosed:

20       Axis I:        PTSD

21       Axis II:       Defer

22       Axis III:      Hypertension, diabetes, history of surgery for carpal tunnel syndrome

23       Axis IV:       Losing her husband

24       Axis V:        GAF = 55-60

25       AR 627.

26       The doctor opined:

27            She could not do any math so she is unable to manage her funds.

28            She should be able to perform simple tasks.

                                          14

She will have difficulty performing detailed tasks because of her grief, her depressive symptoms, getting irritated easily, her anxiety and her fear of dying, and limited social skills, language barrier and cultural barrier. For these reasons, she will have difficulty accepting instructions, performing work activities on a consistent basis, maintaining regular attendance, or dealing with stress in the workplace.

AR 627-28.

### 5. **Medical Source Statement**

Dr. Zakharyan prepared a physical medical source statement on May 26, 2016. AR 709-11. The doctor wrote that Plaintiff's diagnoses were anxiety, depression, diabetes, diabetic neuropathy, and low back pain. AR 709. She could walk two blocks without rest or severe pain. AR 709. Plaintiff could sit for thirty minutes at a time and stand for thirty minutes at a time. AR 709. In an eight-hour workday, she could sit at least six hours and stand or walk less than two hours. AR 709. Dr. Zakharyan did not know if Plaintiff needed to be able to shift positions at will, but stated that Plaintiff did not need a period of "walking around" in an eight-hour work day. AR 709. Plaintiff would not need unscheduled breaks during a work day, did not need to elevate her legs, and did not require an assistive device to stand or walk. AR 710. She could occasionally lift less than ten pounds. AR 710. She had no significant limitations with reaching, handling or fingering. AR 710. She could be expected to be off task about 25 per cent of the work day. AR 711. Plaintiff was capable of low stress work. AR 711. She was likely to experience good days and bad days and was likely to be absent from work about four days each month. AR 711.

On May 26, 2016, Dr. Zakharyan prepared a mental medical source statement. AR 712-13. The following mental aptitudes and abilities did not preclude performance of any aspect of work: understand and remember very short and simple instruction; carry out very short and simple instructions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; and adhere to basic standards of neatness and cleanliness. AR 411-13. The following aptitudes and abilities would preclude performance for five per cent of an eight-hour work day: maintain regular attendance and be punctual within customary, usually strict, tolerances; accept instructions and respond

appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; maintain socially appropriate behavior; travel in unfamiliar place; and use public transportation. AR 712-13. The following aptitudes and abilities would preclude performance for ten per cent of an eight-hour work day: remember work-like procedures; maintain attention for a two hour segment; sustain an ordinary routine without special supervision; work in coordination with and proximity to others without being unduly distracted; compete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. AR 712. Plaintiff could be expected to be absent from work three days per month. AR 713.

### B.       **Applicable Law**

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it

///

conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)).

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of his treatment records. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguable support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

## C.    Plaintiff's Credibility

The ALJ's analysis of Plaintiff's residual functional capacity began with consideration of Plaintiff's credibility. The ALJ found that Plaintiff's subjective representation of her mental and physical impairments was not consistent with the medical evidence of record:

> The claimant's statements regarding the extent of her symptoms and their limiting effects are compelling only to the extent that they are consistent with the evidence. Despite her impairments, the claimant has engaged in a normal level of daily activity and interaction. The claimant's admitted activities of daily living include: cleaning, performing household tasks, doing the laundry, taking care of personal care and hygiene, cooking, going to church, and visiting with family. The claimant has described activities of daily living, which are not limited to the extent one would expect, and as such, I find the claimant's ability to participate in such activities affects the persuasiveness of the claimant's allegations of functional limitations.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 25-26 (citations to record omitted).

17

/// Plaintiff does not challenge the ALJ's credibility assessment before this Court.

### D. The ALJ's Determination is Specific, Legitimate and Based on the Record as a Whole

As noted in issue one above, the ALJ first considered medical opinions of Plaintiff's mental impairments immediately following her step two determination that the mental impairments were not severe. The ALJ gave "significant, but not great," weight to Dr. Lewis's opinions finding that Dr. Lewis identified as limitations only Plaintiff's possible inability to manage her own funds, and minimal likelihood of emotional deterioration in a work environment. AR 23. In contrast, the ALJ gave little weight to Dr. Khalifa's opinion which failed to consider much of the medical evidence of record, was inconsistent with the diagnoses and limited treatment of record, and presented restrictions more restrictive than the evidence would support. AR 23-24. The ALJ also considered the varying GAF scores included in the record but found them to be of less evidentiary value that the objective details and chronology of the record as a whole. AR 24.

Evaluating Plaintiff's physical impairments in the residual functional capacity analysis, the ALJ first recognized that Plaintiff's obesity constituted a severe impairment in that it affected Plaintiff's ability to ambulate and the functioning of her bodily systems. AR 26. Nonetheless, the ALJ relied on Dr. Zakharyan's treatment records to support the residual functional capacity finding despite evidence of Plaintiff's lumbar degenerative joint disease. AR 26. In particular, Dr. Zakharyan noted "good gains since the onset of physical therapy," particularly in range of motion and overall function. AR 26. As a result, Dr. Zakharyan's treatment of Plaintiff was routine and conservative, including manual therapy, electrical stimulation, and therapeutic exercise. AR 26. "The lack of more aggressive treatment, surgical intervention, or even a referral to a specialist suggests that the claimant's symptoms and limitations were not as severe as she alleged." AR 26.

Similarly, the ALJ found that the medical records of successful surgical intervention for carpal tunnel syndrome were inconsistent with Plaintiff's subjective complaints of severe hand symptoms. AR 27. Plaintiff herself "reported no symptoms and stated she was feeling much better." AR 27.

Having reviewed and evaluated records of the successful treatment of numbness and pain in Plaintiff's hands, the ALJ gave little weight to the consultative opinion of internist Samuel Rush, M.D. AR 27. She contrasted Dr. Rush's November 20, 2013 opinion, which was provided prior to Plaintiff's hand surgery, with his July 14, 2014, opinion afterward, and gave Rush's opinions little weight since they were based on a single examination and conflicted with treatment evidence. AR 27.

The ALJ also gave little weight to Dr. Zakharyan's statement. AR 27-28. Despite acknowledging that the opinions of treating physicians are generally considered more reliable, the ALJ concluded that "Dr. Zakharyan assessed functional limitations that are greater than the evidence supports, including the claimant's effective physical therapy and the claimant's admitted activities of daily living." AR 28.

Plaintiff challenges the ALJ's conclusions based on Dr. Zakharyan's status as Plaintiff's treating physician, and the existence of evidence within the record to support Dr. Zakharyan's opinion and justify a finding that Plaintiff is disabled. Plaintiff's preferred analysis and outcome are not controlling here.

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of the

medical records and opinions. Even if this Court were to accept that the record could support

Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the

evidence could arguable support two interpretations, the Court may not substitute its judgment for

that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

**VIII.** **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not

disabled is supported by substantial evidence in the record as a whole. and is based on proper

legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative

decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment

in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against

Plaintiff, Antoinette Kalanjian.


IT IS SO ORDERED.

Dated:   **January 5, 2019**                     **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE